Macomber, J.
The last point made by the counsel for the appellants is a request that the court reverse the judgment as being contrary to or against the weight of the evidence. Under the decision in the case of Porter v. Smith, 107 N. Y. 531, 14 N. E. Rep. 446, we should be justified in refusing to look further into the facts than as they appear to be disclosed by the findings of the-learned judge at the trial; for there is no certificate showing that the case on appeal contains all of the evidence produced upon the trial. We have never *34 theless examined the testimony in detail, in order to discover whether or not the position upon the argument taken by the counsel for the appellant can be maintained. From an examination of the case, it appears that in the month of September, 1881, the plaintiffs advanced to one JBalsz a considerable sum of money for the purchase of cattle in Chihuahua, in Mexico, for the balance of which, namely, the sum of $9,578.75, this action is brought. Mr. Balsz appears not to have made these purchases upon his own account, but in behalf of the firm of Lord & Williams, who had a subcontract for supplying the government with beef at Tucson and other places in Arizona. Lord & Williams were not the original contractors with the government for the supply of cattle to its agencies in the territory of Arizona, but were subcontractors under Hunter&Evans, who dealt directly with the government. Hunter & Evans had agreed to furnish the cattle at the price of $3.73 per hundred pounds. Lord & Williams had in turn agreed to furnish such cattle to Hunter & Evans for the sum of $2.90 per hundred weight. The defendants H. IC. and F. B. Thurber & Co. had guarantied the faithful performance by Lord & Williams of their undertaking, and by so much were interested in the proper execution of the original agreement with the government. The plaintiffs seek to charge these defendants with liability, both upon the ground of being original or interested contractors for the supply of the government with beef under the Hunter contract, so-called, or for the reason that by an arrangement with Balsz the cattle in question were charged with the payment of the money so advanced by the plaintiffs under an agreement made with Balsz for a lien therefor. Both of these questions are decided as matters of fact against the plaintiffs by the trial judge. If the evidence sustains such findings, it follows as a matter of course that the judgment should be affirmed.
In regard to the claim that there was an agreement for a lien upon the cattle themselves for the amount of money advanced by the plaintiffs, the case depends wholly upon the testimony of the plaintiff Thomas Macmanus, who had the principal conduct and charge of the plaintiffs’ part in this transaction. He states that Balsz called at the office of the plaintiffs, and informed the witness that he had arrived at the city of Chihuahua, and wished to purchase cattle to fulfill the engagements that had been made to deliver them to agencies at Tucson, Arizona, and requested the witness to advance him money, which would afterwards be repaid. The witness further testifies that Balsz also told him that he would probably need thirty or forty thousand dollars more to buy several thousand head of cattle to supply the same contracts, and requested the witness to inform parties who owned cattle in the city of Chihuahua that, in any business transactions they would have with him as agent of parties holding the contracts, they would be perfectly safe in dealing with him, Balsz, which representations the plaintiffs accordingly made. This testimony falls far short of creating a lien upon the cattle for moneys advanced for the purchase thereof. It merely establishes a personal liability on the part of Balsz and of others for whom he was acting as agent. Baisz was not himself called as a witness, and we have not, therefore, the benefit of his version of the interview with the plaintiffs.
There being no lien directly upon the cattle, are the defendants chargeable as the real parties in interest in the purchases made at Chihuahua? This question is to be answered by the testimony of the defendant Horace K. Thurber, who was called by the plaintiffs themselves, and thus given full credit as a witness. His evidence establishes the fact that his firm had no interest in the contract for the supplying of cattle to the government’s agencies, other than as mere sureties upon the contract which had been entered into by Lord & AVilliams, until after the failure of Lord & AVilliams, which occurred on the 25th day of October, 1881. At that time, becoming alarmed at the situation, they sent their agent, Mr. Lynes, to Tucson, where the cattle purchased by Balsz had been pledged to the Pima County Bank by Balsz for advances made *35 thereon. The defendants caused the bank to be reimbursed for such advances, they being $8,038.89, and took from the bank and from Balsz also a bill of sale of the cattle, being about 850 in number. Some evidence has been given by the plaintiffs to the effect that this representative of the plaintiffs, Mr. Lynes, at that time, which was in November, 1881, agreed that the plaintiffs, if they would withhold legal proceedings, which they threatened, should be reimbursed for all of their advances by the defendants. This evidence'is denied by Mr. Lynes, and, under the circumstances attending the transaction, we cannot say that the learned justice at the trial erred in finding as a fact that such agreement, even at that time, was not made. Becurring again to the evidence of Mr. Thurber, the defendants’ connection with the transaction is shown in detail, and from it was properly derived the conclusion at the trial that whatever acts were done by them after the failure of Lord & Williams were prompted by an effort on their part to save themselves from liability under their guaranty for the faithful performance by Lord & Williams of their contract witli Hunter & Evans. Prior to that time they had incurred no personal liability, and no agreement appears to have been made by them •assuming any liability to the plaintiffs as to the original parties to the purchase of the cattle at Chihuahua. It follows the judgment should be affirmed, with costs.
Van Brunt, P. J., and Bartlett, J., concur.